BOARDMAN, EDWARD F. (Ret.), Judge.
The appellant, Allied Fidelity Insurance company (Allied), challenges that portion of the final judgment limiting its recovery under a bail bond agreement to foreclosure of mortgages securing the agreement, and the trial court’s denial of its request for attorney’s fees. We affirm the trial court’s limitation of Allied’s damages but reverse its denial of attorney’s fees.
The bail bond agreement constituting the basis for this appeal authorized appellee, Bernard Scott (Scott), to execute bail bonds on behalf of individual principals while Allied functioned as the surety for the bonds. In conjunction with that agreement, two promissory notes, each in the amount of $10,000 secured by mortgages over real property, were executed respectively by ap-pellees Bernard and Bettye Scott, as husband and wife, and Scott’s Enterprise Corporation. The notes and mortgages were to become due and payable at such time as Scott became indebted to Allied under the bail bond contract. Both instruments encompassed a provision for attorney’s fees in the incident of litigation. The bail bond contract further provided that:
In the event of breach of this Agreement by any party hereto and/or any action by Company to enforce compliance herewith by any party, ... each party hereto [Bernard and Bettye Scott and Scott’s Enterprise Corporation], jointly and severally, shall indemnify, hold and save Company [Allied] harmless from any and all damages, losses, injuries, costs, expenses and liabilities, including but not limited to, ... attorneys’fees, ... which Company may sustain or incur from time to time as a result of, arising from or in connection with such breach by any party hereto and/or such action by Company. (Emphasis added.)
Pursuant to a termination clause in the contract, Allied notified Scott by letter of its intention to terminate the agreement. Allied’s letter made clear, however, that Scott had a continuing obligation to administer and finalize the bonds executed before the contract’s effective date of termination. Allied sued the appellees for breach of the bail bond contract and to seek acceleration of the notes and foreclosure of the mortgages. In its complaint Allied requested reasonable attorney’s fees as provided for under the contract, notes and mortgages. At the nonjury trial, Allied reiterated its demand for fees, but did not introduce any evidence in support of that request. Approximately $100,000 in losses incurred by Allied under the contract were stipulated in evidence by the parties, as were the contract, notes and mortgages. The trial court found in favor of Allied, but limited its damages to foreclosure of the mortgages. The court declined to award Allied attorney’s fees. This appeal follows.
As its first point, Allied argues that the trial court erred in failing to award Allied damages for the entire amount of its stipulated losses since the contract provided for one hundred percent indemnification by the appellees.[1] We find this initial contention meritless.
If there is any theory or principle of law that would support the trial court’s judgment in the present case, we are impelled to affirm as the judgment is accorded a presumption of correctness. Cohen v. Mohawk, Inc., 137 So.2d 222 (Fla.1962). Implicit in the appellees’ agreement to hold Allied one hundred percent harmless is Allied’s promise to refrain from any action that would hinder appellees’ performance *317 under the contract. Harbour Inn, Inc. v. Kagan, 343 So.2d 1353 (Fla. 2d DCA 1977).
Here, the record discloses that Allied engaged in certain conduct that impeded Scott’s performance under the bail bond agreement. Scott’s duties under the contract included ensuring compliance by bond principals. Evidence adduced at the trial established that for a period of approximately two to three months Allied removed Scott’s files from his office, thereby hindering him from locating the majority of the bond principals to secure their appearances in court. The evidence further reveals that during the same period in which Scott was deprived of his files, the clerk’s office was instructed by Allied to remit all notices of appearances of bond principals administered by Scott to another agent of Allied. As a direct result of Allied’s interference, many of the bonds executed by Scott were forfeited. Allied now attempts to recover the resultant losses by seeking to enforce the indemnification clause in the contract.
Under the facts before us, Allied cannot avail itself of Scott’s nonperformance of his obligations under the contract, upon which the application of the indemnity clause is contingent, to the extent that Allied prevented Scott’s fulfillment of those duties. See Paparone v. Lake Placid Holding Co., 438 So.2d 155 (Fla. 2d DCA 1983).
We, therefore, conclude that there was ample, competent evidence in the record to sustain the trial court’s reduction of Allied’s damages in relation to the degree of its intervention with Scott’s performance under the bail bond agreement. Cohen.
Lastly, Allied asserts that the trial court erred in denying its claim for attorney’s fees for the reason that proof of the fees was not produced during the nonjury trial. We agree.
Our supreme court resolved this point in Allied’s favor when it held in Cheek v. McGowan Electric Supply Company, 511 So.2d 977 (Fla.1987), that proof of attorney’s fees provided by contract may be presented for the first time after final judgment pursuant to a motion for attorney’s fees.[2]
Accordingly, for the foregoing reasons, we affirm in part and reverse in part the trial court’s order, and remand the case for further proceedings consistent with this opinion.
CAMPBELL, A.C.J., and HALL, J., concur.

. The following provision was contained in the parties’ bail bond agreement:
GENERAL INDEMNIFICATION, (a) In addition to and not in derogation of any and all liability the following or any of them otherwise may have at law and/or equity for nonperformance of this Agreement:
... Representative and each Representative Indemnitor [Bettye and Bernard Scott and Scott’s Enterprise Corp.], jointly and severally, shall indemnify, hold and save Company harmless from 100%; ...

. We point out that the trial judge did not have the benefit of the Cheek decision when he rendered the order which is the subject of this appeal.